# EXHIBIT A

BURNS & LEVINSON LLP

THOMAS T. REITH
617.345.3258
TREITH@BURNSLEV.COM

125 SUMMER STREET   BOSTON, MA 02110
T 617.345.3000   F 617.345.3299
BURNSLEV.COM

November 17, 2016

*VIA FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO: 9414726699042958428535*

*VIA FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN RECEIPT
REQUESTED NO: 9414726699042958428542*

First Advantage Enterprise Screening Corp.
1 Concourse Parkway NE, Suite 200
Atlanta, GA 30328
ATTN:  Managing Agent/Legal

Symphony Technology Group, LLC
2475 Hanover Street
Palo Alto, CA 94304
ATTN:  Managing Agent/Legal

Re:   *Neighborhood Pay Services, LLC v. First Advantage Enterprise Screening
Corporation and Symphony Technology Group, LLC*
**Middlesex Superior Court, Civil Action No. 1681CV03307**

Dear Sir/Madam:

Pursuant to Mass. General Laws, Chapter 223A (the Massachusetts Long Arm Statute), enclosed is a copy of the Verified Complaint, Civil Action Cover Sheet, Summons and Civil Tracking Order with regard to the above-entitled action.  We call your attention to the Massachusetts Rules of Civil Procedure which provide that you or your counsel have twenty days within which to respond to the same, as set forth in the Summons.

Very truly yours,

Thomas T. Reith

TTR/gc
Enclosures

4851-3745-5165.1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 16-_____

16-3307

NEIGHBORHOOD PAY SERVICES, LLC,   )
                                  )
        Plaintiff,                )
                                  )
v.                                )
                                  )
FIRST ADVANTAGE ENTERPRISE        )
SCREENING CORPORATION and         )
SYMPHONY TECHNOLOGY GROUP,        )
LLC,                              )
                                  )
        Defendants.               )
                                  )

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

NOV 17 2016

CLERK

## VERIFIED COMPLAINT

Plaintiff Neighborhood Pay Services, LLC, by and through its attorneys, Burns &

Levinson LLP, and complaining of the Defendants First Advantage Enterprise Screening

Corporation and Symphony Technology Group, LLC alleges as follows:

## NATURE OF THE ACTION

1.      This action arises out of Defendants' knowing breaches of a certain sales referral

agreement as it relates to Year 1 contractual obligations and Defendants' anticipated breaches of

that contract as it relates to Year 2 contractual obligations.  Georgia Law controls this civil

action.

## PARTIES

2.      Neighborhood Pay Services, LLC is a Delaware limited liability company

registered to do business in the Commonwealth of Massachusetts with a principal place of

business at 90 Oak Street, Newton, Massachusetts ("NPS").

3.      Defendant First Advantage Enterprise Screening Corporation is a Delaware

corporation with a business address of 1 Concourse Parkway NE, Suite 200, Atlanta, Georgia.

("FAESC"). Upon information and belief derived from the First Advantage corporate website,

the Symphony Technology Group, LLC corporate website, corporate records retrieved from the

State of Delaware and/or FAESC personnel, including Mark Parise; (a) FAESC is a Symphony

Technology Group, LLC portfolio company; (b) FAESC is a direct subsidiary of the Symphony

Technology Group, LLC; (c) Symphony Technology Group, LLC owns 100% of FAESC's

capital stock; (d) FAESC and Symphony Technology Group, LLC have common directors or

officers, including Marc Bala; and (e) Symphony Technology Group, LLC finances FAESC and

ultimately controls FAESC such that FAESC does not act independently from Symphony

Technology Group, LLC.

4.      Defendant Symphony Technology Group, LLC is a Delaware limited liability

company with a business address of 2475 Hanover Street, Palo Alto, California ("STG").

According to STG's corporate website, STG is a strategic private equity firm that invests in and

acts as a partner in building software and services companies like FAESC.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the Defendants and the subject matter of this

action for the Defendants conduct business in Massachusetts (as they did, for example, with NPS

and they contract to supply services in Massachusetts (as they did, for example, with NPS).

6.      Venue is proper in this county, as NPS maintains a usual place of business in

Middlesex County.

## STATEMENT OF THE CASE

7.      NPS is a financial technology enabled company serving the rental housing

industry. NPS operates a proprietary payroll direct deposit platform for rent through the

company's NPS Rent Assurance® program, which enables landlords to achieve improved

2

reliability from a large segment of multifamily apartment renters who present higher payment risk due to sub-par credit.

8.      FAESC is a resident screening company that provides a mechanism for landlords (including landlords in Massachusetts) to verify consumer identity, credit worthiness, criminal history, rental history, employment background and more to determine the risk of renting to a tenant and help the landlord avoid financial and legal issues in renting apartments.

9.      In Q2 2014, NPS entered into discussions with three leading providers of screening and marketing services to the multifamily industry, including FAESC, to expand their sales and/or existing property client relationships by introducing clients to the NPS Rent Assurance® program as a valuable business solution in mitigating the credit risk among renters identified in screening. In what would be a mutually beneficial business arrangement, these companies also sought to differentiate their screening and marketing solutions in competing for screening business in the highly competitive industry sector, while NPS sought to add to its new business pipeline and, thereby, its revenue.

10.     On or about June 18, 2014, Richard Levitan met with David Carner of FAESC at the National Apartment Association Education Conference in Denver, Colorado to follow up on several phone conversations that occurred over four to five months prior regarding a potential business relationship between FAESC and NPS.

11.     In June 2014, NPS and FAESC executed a nondisclosure agreement in furtherance of discussions concerning their potential business relationship.

12.     In July 2014, NPS and FAESC discussed the terms of the potential business relationship and exchanged a term sheet.

13.     In September 2014, FAESC and NPS met and, among other things, discussed: (a) their respective business models; (b) the services each entity provided, generally, and those

3

FAESC could and would provide to NPS, specifically; (c) the value proposition to both parties as it pertained to the prospective business relationship being considered by FAESC and NPS; and (d) the revenue the prospective business relationship would create for NPS, a portion of which would be shared with FAESC as illustrated in the contemplated sales referral agreement (see *infra* paragraph 17).

14.     As it related to revenue, the parties' agreed-upon projections represented new customer acquisition for NPS through FAESC's efforts that would generate more than $10,000,000 in revenue for NPS over a three-year period.

15.     In November 2014, NPS and FAESC reached agreement in principle and began negotiating terms of their anticipated written agreement.

16.     NPS elected to contract with FAESC over other potential screening partners because, among other things, FAESC offered to commit the largest cash payment if it failed to meet contractual goals and it assured NPS that its team would be comprised of an appropriate number of qualified individuals to achieve said goals.  FAESC was aware of this fact.

17.     Accordingly, after extensive negotiations establishing minimum goals to be reached each year of the contract, as well as declining penalties associated with reaching a percentage of goals, NPS entered the subject Sales Referral Agreement with FAESC on or about January 29, 2015.  A true and accurate copy of the Sales Referral Agreement ("SRA") is appended hereto at Exhibit 1 and is incorporated as if fully stated herein and made part hereof.

18.     By the SRA, FAESC committed to arranging and guarantying a specific minimum number of marketing efforts, including "Meeting[s]" (as defined by the SRA), every 12 months for a set period of time, in exchange for exclusive data sharing and marketing arrangements.  See Exhibit 1, generally, and Exhibit 1 at Para. 4 "Term of Agreement" and Exhibit A ("*NPS Referral Terms*") and Exhibit B ("*FAESC Marketing Terms*") thereto.

19.     Richard Levitan and other NPS personnel met and/or consulted with FAESC sales teams on multiple occasions during 2015 in an attempt to assist in those teams' sales efforts.

20.     FAESC failed to satisfy the marketing obligations it was required to perform during the first 12 months of the SRA ("Year 1"). More specifically, FAESC failed to satisfy its "Meeting" obligation under the SRA during Year 1. See Exhibit 1 and Exhibit B thereto at *"FAESC Marketing Terms."*

21.     As a result, FAESC and STG owe NPS $200,000 in connection with Year 1. See Exhibit 1, at Exhibit B at "*FAESC Marketing Terms*" and "*FAESC Financial Commitment to NPS.*"

22.     To date, and despite repeated demands, neither FAESC nor STG have paid NPS the $200,000 due and owed NPS.

23.     During the second 12-month period of the SRA ("Year 2"), Richard Levitan emailed with, spoke on the telephone with and met with a various FAESC personnel and/or representatives, including David Carner, and other duly authorized agents.

24.     NPS personnel initiated those interactions to determine, among other things, when FAESC was going to pay the outstanding $200,000 and what FAESC intended to ensure it satisfied its Year 2 obligations.

25.     During certain of those interactions, which took place in early to early-mid 2016, FAESC personnel and duly authorized agents informed and/or indicated to NPS personnel that: (a) FAESC and STG were both aware of the contractual obligation due and owed NPS; (b) FAESC was constrained by financial and personnel controls STG implemented dating back to Year 1, and such constraints may impact FAESC's Year 2 performance; notwithstanding, (c) FAESC would act in good faith under the SRA.

26.     Recognizing FAESC's lack of performance in Year 2, in mid to mid-late 2016,

NPS personnel sought assurances from FAESC that FAESC was performing in good faith under the SRA and that FAESC would meet its Year 2 obligations.

27.    FAESC failed and/or refused to respond to NPS personnel's outreach concerning Year 2 obligations.

28.    SRA Year 2 ends January 29, 2017.

29.    To date, FAESC has scheduled one Meeting of the 85 needed to satisfy the Year 2 obligation.

30.    FAESC will not be able to meet its Year 2 "Meeting" obligations by end of day January 29, 2017.

31.    STG was aware of, approved of and ultimately controlled the FAESC conduct complained of herein.

32.    FAESC failure to satisfy its Year 2 obligations requires FAESC and STG to pay NPS $150,000.  See Exhibit 1 and Exhibit B thereto at "*FAESC Marketing Terms*" section "*FAESC Financial Commitment to NPS.*"

33.    NPS has repeatedly afforded FAESC multiple opportunities to cure its SRA breaches, yet FAESC has rejected such opportunities.

34.    STG is on notice of the dispute giving rise to this action and all facts pleaded herein on account of, among other things: (a) upon information and belief, FAESC personnel notifying STG; (b) STG's control of FAESC; and NPS counsel's June 30, 2016 letter to STG. Yet, STG refuses to engage NPS or satisfy its and FAESC's obligations.

35.    NPS has satisfied all conditions precedent to filing this action.

## CAUSES OF ACTION

### Count I
### (Breach of Contract)

36.     NPS repeats and realleges the allegations contained in the preceding paragraphs of the Verified Complaint as if fully set forth at length herein.

37.     The SRA constitutes an enforceable contract.

38.     FAESC, by its conduct, and STG, by, among other above-plead conduct, its control of FAESC, have materially breached the terms of that contract for Year 1 and are anticipated to breach the terms of that contract for Year 2.

39.     As a direct, proximate and foreseeable result of the Defendants' breaches and anticipated breaches of contract, NPS has suffered and will continue to suffer harm in the form of lost market share and damaged good will, as well as monetary damages.

40.     FAESC and STG are liable in the amount of all damages NPS has sustained on account of their breaches and anticipated breaches of contract, together with interest, costs and attorneys' fees.

41.     The amount of those damages are in excess of $10,000,000.

### Count II
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

42.     NPS repeats and realleges the allegations contained in the preceding paragraphs of the Verified Complaint as if fully set forth at length herein.

43.     A covenant of good faith and fair dealing exists in all contracts including the SRA.

44.     By their knowing and intentional conduct, which includes: (i) failing and/or refusing to appropriately fund FAESC's efforts under the SRA; (ii) failing/or refusing to appropriately staff FAESC's SRA team; and (iii) refusing to pay monies due NPS, the

7

Defendants have breached the covenant of good faith and fair dealing implied in the SRA.

45.     As a direct, proximate and foreseeable result of the Defendants' breaches of the implied covenant of good faith and fair dealing, NPS has suffered and will continue to suffer harm.

46.     FAESC and STG are liable in the amount of all damages NPS has sustained on account of their breaches of the implied covenant of good faith and fair dealing, together with interest, costs and attorneys' fees.

### PRAYERS FOR RELIEF

**WHEREFORE**, NPS respectfully requests that this Honorable Court:

A.     Enter judgment in favor of NPS on all counts of this Verified Complaint;

B.     Award NPS all damages it proves at trial to have suffered as a result of Defendants' conduct;

C.     Award NPS all costs, expenses and attorneys' fees it incurs in prosecuting this matter; and

D.     Award NPS such other and further relief that justice so requires.

Respectfully submitted,

NEIGHBORHOOD PAY SERVICES, LLC,

By its attorneys,

Thomas T. Reith (BBO #648671)
treith@burnslev.com
Erica Mastrangelo (BBO #661561)
emastrangelo@burnslev.com
Burns & Levinson LLP
125 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-3000
Facsimile: (617) 345-3299

Dated: November 17, 2016

8

## VERIFICATION

I, Richard A. Levitan hereby depose and say that I am the President of Plaintiff Neighborhood Pay Services, LLC, that I have reviewed the foregoing Verified Complaint, and that the averments set forth therein are true to the best of my knowledge, information and belief.

Signed under the penalties of perjury this ⅙ day of November, 2016.

Richard A. Levitan

4849-9568-2619.1

# EXHIBIT 1



## First Advantage

A Symphony Technology for you Company

### SALES REFERRAL AGREEMENT

This Sales Referral Agreement (the "Agreement") is entered into on January 29, 2015 (the "Effective Date") between Neighborhood Pay Services, LLC ("NPS") a Delaware company with a business address of 90 Oak Street, Suite 410, Newton, MA 02464 and First Advantage Enterprise Screening Corporation, ("FAESC") a Delaware corporation with a business address of 1 Concourse Parkway NE, Suite 200, Atlanta, GA 30328.

The parties agree as follows:

1. **SCOPE OF AGREEMENT**

   NPS and FAESC desire to engage in a referral agreement whereas FAESC would agree to market certain services ("Services") of NPS to customers and prospects. The parties agree to the additional terms set forth in Exhibit A – NPS Referral Terms and Exhibit B – FAESC Marketing Terms.

2. **RESPONSIBILITIES OF THE PARTIES**

   The parties agree to undertake the following activities:

   a. Each party to assign a referral manager to act as a single point of contact.

   b. NPS to provide sales and technical training to FAESC with respect to the Services and target markets.

   c. Each party to assume liability for their own expenses in conjunction with their performance under this Agreement.

   NPS, without notice or obligation to FAESC, and in its absolute discretion may: (i) accept or reject any referred customer, (ii) decline to enter into an agreement with a referred customer, (iii) establish or change the qualifications and criteria for its customers, (iv) waive, compromise or decline to enforce any claim for amounts due from a referred customer, or (v) discontinue the sale of any or all of its Services as defined in Exhibit B.

   FAESC shall use only the latest marketing and promotional material developed under the terms outlined in Exhibit B (the "Marketing Material") for purposes of promotion of the Services;

   FAESC shall not make any representation with respect to the Services of NPS, or otherwise disclose information in respect of the Services of NPS, except for representations and information contained in the Marketing Material;

   Neither party shall make any statement regarding the other party that is untrue or misleading, or that misrepresents the other party or the nature of the Services.

3. **RELATIONSHIP BETWEEN THE PARTIES**

   Each party is an independent contractor. No agency or joint venture relationship is created by this Agreement. Neither party shall have any right or authority to act on behalf of the other or represent that it has such right or authority.

   FAESC will make best efforts to inform the other of any opportunities or leads for the sale of Services to a potential customer in the Monthly Report defined in Exhibit B.

4. **TERM OF AGREEMENT**

   This Agreement shall have an initial term of two (2) years from the Effective Date (the "Term") and shall thereafter renew automatically for successive one (1) year terms unless either party indicates its intention to not renew at least sixty (60) days prior to the expiration of the then current term.

   Both parties may terminate this Agreement immediately upon notice to the other in the event of any breach by a party of any of the terms of this Agreement and such breach is not cured within thirty (30) days of written notice from the non-defaulting party.

5. **FEES**

   NPS shall pay FAESC a referral fee for a Qualified Referral Account ("QRA") earned by NPS from a QRA for the Services at the amounts set forth in the attached Exhibit A. A QRA shall mean a customer purchasing NPS's Services as a result of the referral as defined in Exhibit B and maintained in the Monthly Report. QRA's do not include existing or previous clients or prospects of NPS. Referrals that are from an existing or prior client or prospect have the right to be rejected by NPS. NPS shall provide FAESC with a report each calendar quarter stating the amounts earned for QRAs in the applicable quarter to establish the basis for the referral fees. Fees shall be paid within thirty (30) days of the end of each quarter for services invoiced to QRAs during the previous quarter.

Any fees related to referred customers signed prior to the termination of this Agreement or any referred customers signed by NPS after the expiration of this Agreement but based on a QRA identified during the term of this Agreement shall be paid in accordance with the terms of this section and survive the termination of this Agreement.

FAESC shall pay NPS the one-time fees as set forth in Exhibit B if it fails to achieve the mutually agreed to marketing goals in the first or second year of this Agreement. Payment, if due, shall be paid to NPS within forty-five (45) days of the end of the applicable year.

6. NOTICE

Any notice, request, authorization, direction, or other communication under this Agreement shall be given in writing and delivered in person or by certified or first class United States mail, properly addressed and stamped with the required postage, or via facsimile to the intended recipient as follows:

    If to FAESC

        First Advantage Enterprise Screening Corporation
        140 Fountain Parkway North, Suite 410
        St. Petersburg, FL 33716
        ATTN: Legal Dept.
        FAX:  (727) 521-8854

    If to NPS

        Neighborhood Pay Services LLC
        90 Oak Street, Suite 410
        Newton, MA  02464
        Attn: Richard Calmas
        FAX:  857-241-4237

Either party may change its address specified above by giving the other party prior written notice.

7. WARRANTIES

NPS represents and warrants that the Services do and will comply with all applicable laws, including, without limitation, all state and federal laws and regulations. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, NPS AND ITS AFFILIATES DISCLAIM ANY AND ALL OTHER WARRANTIES AND REPRESENTATIONS WITH RESPECT TO THE SERVICES, WHETHER SUCH WARRANTIES AND REPRESENTATIONS ARE EXPRESS OR IMPLIED IN FACT OR BY OPERATION OF LAW OR OTHERWISE, CONTAINED IN OR DERIVED FROM THIS AGREEMENT, ANY OTHER DOCUMENTS REFERENCED IN THIS AGREEMENT, OR ANY OTHER MATERIALS OR COMMUNICATIONS WHETHER ORAL OR WRITTEN, INCLUDING WITHOUT LIMITATION IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

8. INDEMNIFICATION

FAESC shall defend, indemnify and hold NPS, its directors, officers employees and agents (collectively, the "NPS Parties") harmless from and against any and all third party claims, losses, liabilities and expenses (including, without limitation, reasonable attorneys' fees) arising out of (i) any breach by FAESC of the representations and warranties set forth in this Agreement and/or (ii) otherwise arising out of FAESC's acts and omissions in performing this Agreement.

NPS shall defend, indemnify and hold FAESC, its directors, officers employees and agents (collectively, the "FAESC Parties") harmless from and against any and all third party claims, losses, liabilities and expenses (including, without limitation, reasonable attorneys' fees) arising out of (i) any breach by NPS of the representations and warranties set forth in this Agreement and/or (ii) otherwise arising out of NPS's acts and omissions in performing this Agreement.

9. GENERAL

**Entire Agreement.**  This Agreement, along with the Attachments hereto, if any, and incorporated herein by this reference, sets forth the entire agreement between the parties and supersedes all prior or contemporaneous agreements, oral or written, between the parties.

**Waiver.**  Neither party may waive any term or excuse any breach of this Agreement unless such waiver or excuse is in writing and signed by the appropriate party. No waiver or excuse by either party, express or implied, shall constitute a subsequent waiver or excuse.

**Severability.**  Any term or provision of this Agreement held to be illegal or unenforceable shall be deemed amended to conform to applicable laws or regulations, or if it cannot be so amended without materially altering the intention of the parties it shall be stricken and the remainder of the Agreement shall remain in full force and effect.

**Modifications.**  This Agreement may not be modified except by a written instrument executed by an authorized representative of each party.

**Limitation of liability.**  IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER OR ANY THIRD PARTY FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, HOWEVER CAUSED.  EXCEPT FOR A PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, IN NO EVENT SHALL EITHER PARTY'S AGGREGATE LIABILITY TO THE OTHER FOR ANY CLAIMS ARISING OUT OF A BREACH OF THIS AGREEMENT EXCEED THE AMOUNTS PAID UNDER THIS AGREEMENT.

**Course of Conduct.** The employees of FAESC and NPS shall obey all pertinent rules and regulations of the other party while on the premises of the other party during any proposal activities, including those relating to the safeguarding of classified information.

**No publicity.** Neither party shall publicize or disclose any of the provisions of this Agreement without the other party's prior written consent.

**Confidential Information.** Each party shall protect the other's Confidential Information (as defined below) disclosed in connection with the performance of this Agreement, including all technical information previously supplied or to be supplied under this Agreement and shall not use or disclose the other party's Confidential Information except as contemplated in this Agreement. Disclosure of Confidential Information can cause irreparable harm, and at any time either party make seek and obtain injunctive relief as well as monetary damages to stop the unauthorized use or disclosure of Confidential Information and provide economic relief for damage that has occurred. "Confidential Information" shall mean all information and data of the disclosing party or the disclosing party's client or prospective clients, which is protectable as a form of property or non-public information, and shall include without limitation (a) all algorithms, processes, products, specifications and other items or compilations of information, whether in printed or machine-readable form, (b) information relating to research, development, licensing, manufacturing or marketing processes, customer lists, and contracts, or (c) any information that the disclosing party designates as being "Trade Secret", "Proprietary", or "Confidential" or other similar designation, or which, under the circumstances surrounding the disclosure, ought to be treated as Confidential Information. Confidential Information shall not include any information: (a) that is generally known or available to the public without restriction, (b) becomes publicly known without breach of this Agreement or through no wrongful act of the receiving party, (c) is approved in writing for disclosure without restriction by a duly authorized officer of the disclosing party, (d) is already known by the receiving party without restriction when received, or thereafter is developed independently by the receiving party, or (e) is required to be disclosed by legal process or by operation of applicable law.

**Trademarks.** The parties may agree to use the tradename or trademark of the other party for use in its promotional materials however only in accordance with the other party's specified guidelines for trademark usage. Notice and written consent must be provided for every new use. Upon written consent, each party ("Licensor") hereby grants to the other party ("Licensee") a non-exclusive, non-transferable, revocable, worldwide license to use Licensor's trademark (collectively, the "Marks") to advertise and promote Licensee's and Licensor's products and services for the duration of the term of this Agreement.

Licensor may terminate the foregoing trademark license if, in its reasonable discretion, Licensee's use of Licensor's Mark tarnishes, blurs or dilutes the quality associated with Licensor's Mark or the products or services offered by Licensor or the associated goodwill and such problem is not cured within ten (10) days of notice of breach; alternatively, instead of terminating the license in total, Licensor may specify that certain Licensee uses may not contain Licensor's Mark. Licensee shall use Licensor's Mark exactly in the form provided and in conformance with Licensor's brand standards, as may be delivered to Licensee and updated from time to time. Licensee shall not take any action inconsistent with Licensor's ownership of Licensor's Mark, and any benefits accruing from use of such Licensor Mark shall automatically vest in Licensor. Licensee shall not form any combination marks with Licensor's Mark.

Upon the expiration or termination of the Agreement or the licenses granted hereby, Licensee shall immediately cease to use Marketing Material containing Licensor's Mark and shall remove Licensor's Mark from its website.

Title to and ownership of Licensor's Mark shall remain with Licensor. There are no implied licenses under this Agreement, and any rights not expressly granted to Licensee hereunder are reserved by Licensor. Licensee represents and warrants that it will not exceed the scope of the licenses granted hereunder.

Licensee shall not produce or develop any marketing material, whether using Licensor's Mark or not, that: (i) infringes any third party's intellectual property or privacy/publicity right; (ii) violates any law or regulation; (iii) is defamatory, obscene, harmful to minors or child pornographic; (iv) contains any viruses, trojan horses, worms, time bombs, cancelbots or other computer programming routines that are intended to damage, detrimentally interfere with, surreptitiously intercept or expropriate any system, data or personal information; or (v) is materially false, inaccurate or misleading.

**Non-assignment.** This Agreement and the rights and obligations under it are not assignable by either party without the prior written consent of the other party, which shall not be unreasonably withheld. However, either party may assign this Agreement to a successor in interest to either party by reason of a merger, acquisition or consolidation upon written notice to (but without requiring the prior written consent of the other party).

**Governing Law.** This Agreement shall be governed by the laws of the State of Georgia.

Signature Page Follows

1-1005826692

Confidential and Proprietary to First Advantage

122.104.299- V# 05302014

IN WITNESS WHEREOF, the parties have executed this Agreement on the date set forth above.

| First Advantage Enterprise Screening Corporation | Neighborhood Pay Services, LLC |
|---|---|
| By: | By: |
| Name: Bret T. Jardine | Name: Richard A. Levitan |
| Title: EVP, General Counsel | Title: President |
| Date: | Date: February 2, 2015 |

Exhibit A – NPS Referral Terms

| | |
|---|---|
| NPS Service Fee Discount for FAESC clients | • NPS to provide up to a 25% Discount to its Standard Fee (current standard NPS fee is 2% of disbursed funds) to FAESC's referred clients |
| NPS Revenue Share for FAESC | • 10-20% of NPS Resident and Property Company fee revenue from a QRA as shown below:<br><br>   o 10% from 0-2,500 "NPS Active Residents" (An "NPS Active Resident" is a resident for whom NPS has a) received funds from their employer or other source of income in the immediate preceding month that equal 100% of their lease obligation and b) has disbursed the funds to the property company.)<br>   o 15% on all NPS Revenue once NPS Active Residents are > 2,500<br>   o 20% on all NPS Revenue once NPS Active Residents > 15,000<br><br>• Revenue share paid for each NPS Active Resident acquired through the FAESC/NPS relationship for 5 years from the date of the fully-executed NPS Property Company Services Agreement with the QRA. |
| Exclusivity | • NPS to be exclusive to FAESC (e.g. will not establish an agreement to jointly market or share NPS data with other entities in the rental housing screening industry) for an initial two year period from the effective date of this agreement. Notwithstanding, NPS reserves the right to share customer payment history to credit bureaus with the intent to help renters rebuild their credit.<br><br>• Exclusivity auto-renewed at end of initial two year period if total NPS Active Residents are > or = 25,000.<br><br>• Exclusivity auto-renewed after year 3 and annually thereafter if total NPS Active Residents are at least 1.15 X previous year-end NPS Active Residents |

Exhibit B – FAESC Marketing Terms

| | |
|---|---|
| **FAESC Marketing Funding Commitment to NPS** | • FABSC to execute on marketing goals listed below in first year of partnership (Year 1 shall run for a period of 12 months from execution of this agreement. If FAESC fails to execute on these goals, FABSC will make a marketing payment of $50,000 to NPS. This marketing payment will be null and void as long as FAESC achieves minimum mutually agreed upon goals to drive the success of the FAESC-NPS strategic partnership. These goals are as follows:<br><br>○ 1 Joint Client Surveys/White Paper(s)<br><br>○ 6 Trade Show/Conference Participation<br><br>○ 2 sponsored client/prospective client events at Trade Shows/Conferences above<br><br>○ 4 By-line articles, Press Release(s), Media Advisories and/or Editorial Content Development<br><br>○ Digital Content for Sales and Training Support<br><br>○ Sales and Marketing Materials (Ad Slicks, Brochures) Development and Production |
| **FAESC and NPS Interface Commitment** | • FABSC and NPS agree to create and maintain a basic interface between the two services so that FABSC customers may easily offer NPS Services to their applicants, track offers, promote NPS Services and provide other features that improve the user experience. Details of the interface will be outlined in a separate agreement. |
| **FAESC Financial Commitment to NPS** | • FABSC to have a $200,000 payment obligation to NPS due at the end of year one and a $150,000 payment at the end of year two of relationship (Year 2 shall run from the end of Year 1 for a period of 12 months). These payments will be null and void for each year as long as FABSC achieves the minimum mutually agreed upon goals listed below to drive the success of the FAESC-NPS strategic partnership. These payment obligations will be reduced by 75% if at least 75% of the goals are achieved. For the purposes of this Agreement, a "Meeting" is defined as a telephone, in-person and/or internet meeting with a representative with authority to make a decision (i.e. – CEO, COO, Vice President, or a representative with similar responsibilities) at an existing or prospective FAESC client set by an FAESC employee and to include the participation of both the FAESC employee and an NPS employee (assuming they can be available)under the express purpose of discussing NPS RentAssurance, on its own or as part of an overall sales discussion, including the RentAssurance service, value proposition, FABSC integration and/or the joint marketing relationship between the two providers. For existing FABSC clients and prospective FABSC clients, the client must manage and/or own a minimum of two thousand (2,000) apartment units. Additionally, for existing FABSC clients, client-specific screening data will be reviewed by FABSC and NPS to determine that a minimum of 400 applicants have been conditionally approved over the previous twelve (12) month period. FABSC representatives will use best efforts to notify NPS at least five (5) business days in advance of the Meeting so that NPS employees have the opportunity to participate. Furthermore, FABSC and NPS agree to create, maintain, update and make available to the other a monthly report ("Monthly Report") identifying the following information: Prospective client name, meeting date, meeting type (phone/in person/electronic), participants including titles, number of units, percentage chance of close, expected close date, scheduled follow up activities. Sales management from both FABSC and NPS will meet no less frequently than monthly to review Monthly Report |

| | |
|---|---|
| | • The goals are as follows: |
| |    o   Year One: |
| |       ▪   85 Meetings (in person or by phone) with FAESC existing or prospective clients to discuss adding NPS to their offer strategy for conditionally approved and/or denied due to credit applicant population per following quarterly schedule: |
| |           >   First ninety (90) days from Execution of this agreement – 40 Meetings |
| |           >   Second ninety (90) days from Execution of this agreement - 25 Meetings |
| |           >   Third ninety (90) days from Execution of this agreement – 20 Meetings |
| |       OR |
| |       ▪   A minimum of 5,000 NPS Active Residents from FAESC QRA by the end of month 12 of the FAESC/NPS Sales Referral Agreement |
| |    o   Year Two |
| |       ▪   85 Meetings (in person or by phone) with FAESC existing or prospective clients to discuss adding NPS to their offer strategy for conditionally approved and/or denied due to credit applicant population per the following quarterly schedule: |
| |           >   First ninety (90) days of Year 2 - 20 Meetings |
| |           >   Second ninety (90) days of Year 2– 25 Meetings |
| |           >   Third ninety (90) days of Year 2– 25 Meetings |
| |           >   Fourth ninety (90) days of Year 2– 15 Meetings |
| |       OR |
| |       ▪   A minimum of 10,000 NPS Active Residents from FAESC QRA originated in year two of the FAESC/NPS Sales Referral Agreement |
| **FAESC Acquisition Rights** | • FAESC shall be given the right of First Offer<br>• If NPS is approached or is ready to sell, NPS shall give FAESC a 30 day written notice to make its best offer<br>• If NPS doesn't accept FAESC's offer, NPS shall not sell to anyone else for less than or same amount as offered by FAESC<br>• FAESC right of first offer extends for one year after termination of relationship |

Here's what appears on my screen when I open it......

IN WITNESS WHEREOF, the parties have executed this Agreement on the date set forth above.

| First Advantage Enterprise Screening Corporation | Neighborhood Pay Services, LLC |
|---|---|
| By: | By: |
| Name: Bret T. Jardine | Name: Richard A. Levitan |
| Title: EVP, General Counsel | Title: President |
| Date: February 12, 2015 | Date: February 2, 2015 |

Digitally signed by Bret T. Jardine
DN: cn=Bret T. Jardine, o=First Advantage, ou=Legal, email=FADV.Legal@fadv.com, c=US
Date: 2015.02.12 15:44:24 -05'00'

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>168CV03307 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| PLAINTIFF(S): | Neighborhood Pay Services, LLC | | COUNTY | Middlesex |
|---|---|---|---|---|
| ADDRESS: | 90 Oak Street | | | |
| | Newton, MA 02464-1439 | DEFENDANT(S): | First Advantage Enterprise Screening Corporation and Symphony | |
| | | | Technology Group, LLC | |
| ATTORNEY: | Thomas T. Reith | | | |
| ADDRESS: | Burns & Levinson LLP | ADDRESS: | 1 Concourse Parkway NE, Suite 200, Atlanta, Georgia and | |
| | 125 Summer Street, Boston, MA 02110 | | 2475 Hanover Street, Palo Alto, California | |
| | (617) 345-3000 | | | |
| BBO: | 648671 | | | |

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A01 | Breach of sales | F | ☐ YES   ☒ NO |

*If "Other" please describe: referral agreement

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses ......................................................... $ _____
   2. Total doctor expenses ........................................................... $ _____
   3. Total chiropractic expenses .................................................. $ _____
   4. Total physical therapy expenses ............................................ $ _____
   5. Total other expenses (describe below) ......................... Subtotal (A): $ _____

B. Documented lost wages and compensation to date ............................................ $ _____
C. Documented property damages to date .................................................................. $ _____
D. Reasonably anticipated future medical and hospital expenses ............................. $ _____
E. Reasonably anticipated lost wages ......................................................................... $ _____
F. Other documented items of damages (describe below) ........................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                                                    TOTAL (A-F): $ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claim(s):
As more fully set forth in the Verified Complaint filed in this action, Defendants are liable to Plaintiff for their breach of a

certain "Sales Referral Agreement" and related claims.

TOTAL: $ In excess of $10,000,000.00

Date: Nov 17, 2016

Signature of Attorney/Pro Se Plaintiff: X _____

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____                          Date: Nov 17, 2016

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### AC Actions Involving the State/Municipality *

AA1 Contract Action Involving Commonwealth, Municipality, MBTA, etc. (A)
AB1 Tortious Action Involving Commonwealth, Municipality, etc. (A)
AC1 Real Property Action Involving Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action Involving Commonwealth, Municipality, MBTA, etc. (A)
AE1 Administrative Action Involving Commonwealth, Municipality, MBTA,etc. (A)

### CN Contract/Business Cases

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal Affairs of Entities (A)
BA3 Liability of Shareholders, Directors, Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c.231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

### PA Civil Actions Involving Incarcerated Party †

PA1 Contract Action Involving an Incarcerated Party (A)
PB1 Tortious Action Involving an Incarcerated Party (A)
PC1 Real Property Action Involving an Incarcerated Party (F)
PD1 Equity Action Involving an Incarcerated Party (F)
PE1 Administrative Action Involving an Incarcerated Party (F)

### TR Torts

B03 Motor Vehicle Negligence - Personal Injury/Property Damage (F)
B04 Other Negligence - Personal Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical / Wrongful Death (A)
B07 Malpractice - Other (A)
B08 Wrongful Death, G.L. c.229 §2A (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (F)
B99 Other Tortious Action (F)

### RP Real Property

C01 Land Taking (F)
C02 Zoning Appeal, G.L. c. 40A (F)
C03 Dispute Concerning Title (F)
C04 Foreclosure of a Mortgage (X)
C05 Condominium Lien & Charges (X)
C99 Other Real Property Action (F)

### MC Miscellaneous Civil Actions

E18 Foreign Discovery Proceeding (X)
E97 Prisoner Habeas Corpus (X)
E22 Lottery Assignment, G.L. c. 10 §28 (X)

### AB Abuse/Harassment Prevention

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E(X)

### AA Administrative Civil Actions

E02 Appeal from Administrative Agency, G.L. c. 30A (X)
E03 Certiorari Action, G.L. c.249 §4 (X)
E05 Confirmation of Arbitration Award (X)
E06 Mass Antitrust Act, G. L. c. 93 §9 (X)
E07 Mass Antitrust Act, G. L. c. 93 §8 (X)
E08 Appointment of a Receiver (X)
E09 Construction Surety Bond, G.L. c. 149 §§29, 29A (X)
E10 Summary Process Appeal (X)
E11 Worker's Compensation (X)
E16 Auto Surcharge Appeal (X)
E17 Civil Rights Act, G.L. c.12 §11H (X)
E24 Appeal from District Court Commitment, G.L. c.123 §9(b) (X)
E25 Pleural Registry (Asbestos cases)
E94 Forfeiture, G.L. c265 §56 (X)
E95 Forfeiture, G.L. c.94C §47 (X)
E99 Other Administrative Action (X)
Z01 Medical Malpractice - Tribunal only, G.L. c. 231 §60B (X)
Z02 Appeal Bond Denial (X)

### SO Sex Offender Review

E12 SDP Commitment, G.L. c. 123A §12 (X)
E14 SDP Petition, G.L. c. 123A §9(b) (X)

### RC Restricted Civil Actions

E19 Sex Offender Registry, G.L. c.6 §178M (X)
E27 Minor Seeking Consent, G.L. c.112 §12S (X)

## TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | [x] YES  [ ] NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or pro se party.

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

### A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
### MAY RESULT IN DISMISSAL OF THIS ACTION.

TO PLAINTIFF'S ATTORNEY:  PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX ............ , ss

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 1681CV03307

Neighborhood Pay Services, Plaintiff(s)
LLC

v.

First Advantage Enterprise
Screening Corporation, et al
........................... , Defendant(s)

## SUMMONS

To the above-named Defendant:
Symphony Technology Group, LLC
2475 Hanover Street
Palo Alto, CA 94304

You are hereby summoned and required to serve upon ..Thomas..T...Reith,..Esq................................
................................................ plaintiff's attorney, whose address is .Burns.&.Levinson.LLP.
.125.Summer.Street,.Boston,.MA.02110..................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ..200..Trade..Center....

.2nd.Floor,.Woburn,.MA.01801................. either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, **Judith Fabricant**, Esquire, at ....Boston..........................................................................

the .....17th................................................. day of ........November.......................................

...................., in the year of our Lord .....2016............................... .

..................................................................
Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>1681CV03307 | Trial Court of Massachusetts<br>The Superior Court  |
| --- | --- | --- |

| CASE NAME: | |
| --- | --- |
| Neighborhood Pay Services, LLC vs. First Advantage Enterprise Screening Corporation et al | Michael A. Sullivan, Clerk of Court<br>Middlesex County |

| TO: Thomas T. Reith, III, Esq.<br>Burns & Levinson LLP<br>125 Summer Street<br>Boston, MA 02110 | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |
| --- | --- |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

#### STAGES OF LITIGATION                                        DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
| --- | --- | --- | --- |
| Service of process made and return filed with the Court | | 02/15/2017 | |
| Response to the complaint filed (also see MRCP 12) | | 03/17/2017 | |
| All motions under MRCP 12, 19, and 20 | 03/17/2017 | 04/18/2017 | 05/16/2017 |
| All motions under MRCP 15 | 03/17/2017 | 04/18/2017 | 05/16/2017 |
| All discovery requests and depositions served and non-expert depositions completed | 09/13/2017 | | |
| All motions under MRCP 56 | 10/13/2017 | 11/13/2017 | |
| Final pre-trial conference held and/or firm trial date set | | | 03/12/2018 |
| Case shall be resolved and judgment shall issue by | | | 11/19/2018 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
| --- | --- | --- |
| 11/17/2016 | Arthur T DeGuglielmo | (781)939-2757 |

Date/Time Printed: 11-17-2016 09:23:46                                                                 SCV026\11/2014

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 1681-CV-03307

NEIGHBORHOOD PAY SERVICES, LLC, )
)
    Plaintiff, )
)
v. )
)
FIRST ADVANTAGE ENTERPRISE )
SCREENING CORPORATION and )
SYMPHONY TECHNOLOGY GROUP, )
LLC, )
)
    Defendants. )
)



## NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE OF ONLY DEFENDANT SYMPHONY TECHNOLOGY GROUP, LLC

Pursuant to Mass.R.Civ.P. Rule 41(a)(1)(i), Plaintiff Neighborhood Pay Services, LLC

("NPS") hereby voluntarily dismisses WITHOUT PREJUDICE ONLY Defendant Symphony

Technology Group, LLC ("Symphony").   NPS reserves all rights to rename Symphony and/or

amend the Verified Complaint in accordance with Mass.R.Civ.P. Rule 15 or as otherwise

allowed by the Massachusetts Rules of Civil Procedure and/or this Court.

Respectfully submitted,

NEIGHBORHOOD PAY SERVICES, LLC,

By its attorneys,

Thomas T. Reith (BBO #648671)
treith@burnslev.com
Erica Mastrangelo (BBO #661561)
emastrangelo@burnslev.com
Burns & Levinson LLP
125 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-3000
Facsimile: (617) 345-3299

Dated:  December 12, 2016